IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| LINDA GRIFFETH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | **REPORT AND RECOMMENDATION** <br><br> Case No. 1:13-cv-19-TC-EJF <br><br> District Judge Tena Campbell <br><br> Magistrate Judge Evelyn J. Furse |

Plaintiffs Linda and Darin Griffeth ("the Griffeths") filed this personal injury case against the United States of America on January 28, 2013. (ECF No. 2.) The Griffeths now seek leave of Court to amend their Complaint to add twelve new paragraphs that raise new theories of negligence. (Mot. to Amend, Ex. A, Proposed Am. Compl. ¶¶ 19–30, ECF No. 10.) The United States opposes the Griffeths' Motion on three grounds: First, that the Federal Tort Claims Act jurisdictionally bars these new claims of negligence because the Griffeths' did not include them in their administrative claim; second, that the Griffeths' Motion is untimely; and third, that allowing the proposed amendments would unduly prejudice the United States. The undersigned Magistrate Judge[1] agrees with the United States and therefore RECOMMENDS the Court DENY the Griffeths' Motion (ECF No. 10).

---

[1] On January 27, 2014, Judge Tena Campbell referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(A). (ECF No. 13.) Judge Campbell subsequently referred this Motion to the undersigned under 28 U.S.C. § 636(b)(1)(B). (ECF No. 20.)

-1-

## BACKGROUND

In September 2010, Linda Griffeth's recreational vehicle collided with a "large, rubber-tired loader vehicle" in Cache County, Utah. (Compl. ¶ 8, ECF No. 2.) James Roberson, a United States Forest Service ("USFS") employee, operated the USFS-owned loader at the time of the accident. (*Id.*) Ms. Griffeth claims this accident caused severe injury to her leg, ultimately causing her to lose her employment. (*Id.* at ¶¶ 11–12.)

The Griffeths' original Complaint alleges Mr. Roberson negligently operated the loader by being in the wrong lane, failing to keep a proper lookout, failing to have proper lighting on the vehicle, and "fail[ing] to warn oncoming traffic of his location in the road despite being notified that traffic was coming," thereby causing Ms. Griffeth's accident. (*See id.* at ¶ 10.) The Griffeths now seek leave to add twelve paragraphs to their Complaint that add new theories of negligence, namely, that the United States' failure to post warnings, pair the loader with a pilot vehicle, or inform the Griffeths of the construction activities when they inquired about conditions at the ranger station constitutes negligence. (*See id.* at ¶¶ 19–30.)

## DISCUSSION

The Griffeths move for leave to amend pursuant to Federal Rule of Civil Procedure 15, which provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

> [C]ourts may withhold leave to amend only for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment."

*United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The

United States challenges the Griffeths' Motion to Amend on the grounds of futility, undue delay, and undue prejudice.

### A. Futility: The FTCA Jurisdictionally Bars the Proposed Amendment

The Federal Tort Claims Act ("FTCA") provides a waiver of the federal government's sovereign immunity and allows suits for money damages arising from the negligence of government agents. *See* 28 U.S.C. § 1346(b)(1); *Ewell v. United States*, 776 F.2d 246, 248 (10th Cir. 1985) (recognizing FTCA as waiver of sovereign immunity). However, before bringing an action in federal court, FTCA plaintiffs must present a claim to the appropriate federal agency, and that agency must have "finally denied" the plaintiff's claim. 28 U.S.C. § 2675(a). This exhaustion requirement allows the relevant agency an opportunity to investigate and settle the claim before litigation. *Buhl v. United States*, 117 F. App'x 39, 42 (10th Cir. 2004); *Focke v. United States*, 597 F. Supp. 1325, 1349 (D. Kan. 1982). To that end, claims presented to federal agencies must include "'(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim.'" *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005) (quoting *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991)). Courts look to whether the claim apprised the federal agency of the underlying facts at issue, not whether the claim stated the exact ground for liability. *Id.* at 853. "'Because the FTCA constitutes a waiver of the government's sovereign immunity, the notice requirements established by the FTCA must be strictly construed. The requirements are jurisdictional and cannot be waived.'" *Id.* at 852 (citation omitted).

The United States argues the FTCA bars the Griffeths' new theories of negligence because the Griffeths did not include any facts relevant to those theories in their administrative

claim.  (*See* Opp'n Mem. 5, ECF No. 14.)  The United States chiefly relies on the Tenth Circuit's decision in *Staggs v. United States*, 425 F.3d 881 (10th Cir. 2005).  In *Staggs*, the plaintiff's administrative claim alleged that negligent medical care during the delivery of her child caused the child brain damage.  425 F.3d at 883.  Medical staff ultimately delivered the child by way of emergency Caesarean section.  *Id.*  The plaintiff's administrative claim "alleged at least ten deviations from the standard of care, but never mentioned lack of informed consent."  *Id.*  "Prior to trial, the district court granted the government's motion to exclude any evidence of lack of informed consent, reasoning that the theory 'was not raised in the administrative claim or the very detailed complaint.'"  *Id.* at 883–84.  Nonetheless, the plaintiff provided lack-of-informed-consent evidence at trial after the government opened the door to that issue.  *Id.* at 884.  The district court ruled against the plaintiff and noted in a footnote that it lacked subject-matter jurisdiction over her informed-consent claims because her administrative claim had not raised the issue.  *Id.*

On appeal, the plaintiff argued language in her administrative claim implicated lack of informed consent and pointed "to language in her claim that accused the hospital of a 'substantial departure from the standard of care' and the 'negligent management of [her] pregnancy [and] labor.'"  *Id.* (alterations in original).  The plaintiff argued "that failure to obtain informed consent was inherent in this language and other language indicating that during her care, a decision had to be made about changing the course of treatment."  *Id.*  The Tenth Circuit disagreed, noting that under Oklahoma law "the informed consent doctrine 'imposes a duty on a physician or surgeon to inform a patient of his options and their attendant risks.  If a physician breaches this duty, [the] patient's consent is defective, and [the] physician is responsible for the consequences.'"  *Id.* (alteration in original) (citation omitted).  The Tenth Circuit found nothing

-4-

in the administrative claim hinted that the plaintiff consented to any treatment or that medical staff administered any treatment without informing her of her options and risks. *Id.* As a result, the Tenth Circuit found that the hospital "could have reasonably concluded that a claim of lack of informed consent was not intended and that an investigation into lack of informed consent was unnecessary." *Id.* at 885. Because the administrative claim did not give the agency notice to investigate lack of informed consent, the FTCA acted as a jurisdictional bar to any lack-of-informed-consent claims. *Id.* at 884–85.

This case presents facts similar to *Staggs*. The Griffeths' administrative claim consists of the following:

> Claimant was driving a recreational vehicle north on a back country road in Cache County, Utah when she encountered a large rubber tired loader belonging to the Forest Service (Equipment Number EN 1714) and being driven by a Utah Department of Transportation employee James E. Roberson. The loader may not have been in working order, was traveling too fast for the conditions and the driver was not keeping a proper look out and failed to stop or make room in the roadway for the claimant's vehicle to pass. The loader struck claimant's vehicle causing major damage to the vehicle and injury to the claimant.

([ECF No. 14-1](#).) The Griffeths administrative claim presents facts implicating negligence on the part of the loader's driver, Mr. Roberson. The claim does not, however, implicate the new theories of negligence the Griffeths now seek to add regarding failures to warn.

An administrative claim must "'serve[] due notice that the agency should investigate the possibility of particular (potentially tortious) conduct.'" [*Trentadue*, 397 F.3d at 852](#) (quoting [*Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000)](#)). Applying this standard, the Griffeths' administrative claim did not provide notice that the USFS should investigate actions beyond Mr. Roberson's operation of the loader. The Griffeths' administrative claim does not allege, for example, that the Griffeths received no verbal or posted warnings about the ongoing construction or that they received inaccurate information about ongoing

construction. Because the Griffeths' administrative claim focuses solely on Mr. Roberson's actions, the USFS could have reasonably concluded that the Griffeths limited their claims to Mr. Roberson's negligence in operating the loader and therefore deemed investigation into other potentially negligent acts or omissions by other employees regarding warnings unnecessary. The FTCA bars the Griffeths' proposed amendments rendering amendment futile. The undersigned therefore recommends the District Court deny the Griffeths' Motion to Amend.

### B. Undue Delay

If the District Court declines to follow the undersigned's above recommendation, the Court should deny leave to amend on the grounds of undue delay and undue prejudice to the United States.

Although undue delay justifies denial of a motion to amend, the Tenth Circuit has noted the "[e]mphasis is on the adjective: 'Lateness does not of itself justify the denial of the amendment.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (quoting *R. E. B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)). Moreover, "Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action." *Id.* (citations omitted). Instead, "denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" *Id.* at 1206 (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365–66 (10th Cir.1993)).

The Scheduling Order set the deadline for amendment of pleadings at July 15, 2013. (ECF No. 9.) The Griffeths did not file this Motion until January 8, 2014. (ECF No. 10.) Because the Griffeths seek to amend after the deadline to do so has passed, Rule 6 requires the Griffeths to show excusable neglect. Fed. R. Civ. P. 6(b)(1)(B); *see also Johnson v. City of Murray*, No. 2:10-cv-01130-TS-EJF, 2012 WL 5194025, at *2 (D. Utah Oct. 19, 2012)

(unpublished) (analyzing untimely request for leave to amend under Rule 6). The Griffeths meet neither their burden under Rule 6 nor 15(a) to excuse or explain their delay.

To explain their delay in bringing this Motion six months after the deadline to amend, the Griffeths state they only learned of additional evidence supporting their proposed amendments during discovery. (Mem. Supp. 1, ECF No. 10; Reply 5, ECF No. 17.) However, the United States notes "the primary basis for this motion is the deposition testimony given by Plaintiffs themselves on November 15, 2013." (Opp'n Mem. 2, ECF No. 14; ECF No. 14-2 at pp. 76–77, 81; ECF No. 14-3 at pp. 83–84.) The Griffeths do not dispute the United States' position; they do point to "Defendants' discovery responses and depositions" but fail to attach them or elaborate on what those responses included. (Reply 5, ECF No. 17.) The Griffeths' deposition testimony demonstrates the Griffeths already possessed information they assert provides good cause for the delay in bringing the new claims they seek to add: specifically claims about what the Griffeths' themselves did and did not see on the day of the accident. Nowhere do the Griffeths explain why they could not have raised these claims earlier. This lack of explanation justifies denial of their Motion. *See Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998) ("Where [a] party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."); *Johnson*, 2012 WL 5194025, at *2 (denying leave to amend defenses where defendant should have known about the basis for the amendment before the deadline).

The Griffeths next attempt to explain their delay by arguing this case's Scheduling Order lacks clarity. (Reply 5, ECF No. 17.) Specifically, the Griffeths state:

> In a single section titled, "Amendment of pleadings/adding parties," [the Scheduling Order] indicates July 15, 2013 as cutoff date to amend pleadings and

-7-

add parties. Plaintiffs' interpretation of this provision was for an amendment that would add parties, certainly not for an amendment that would clarify existing causes of action.

(*Id.*) This argument lacks merit. Directly below the heading the Griffeths identify, the Scheduling Order contains separate lines identifying deadlines for "Last Day to File Motion to Amend Pleadings" and "Last Day to File Motion to Add Parties," both set for July 15, 2013. ([ECF No. 9](#).)

Lastly, the Griffeths argue the amendment cutoff was "extremely ambitious" and that "discovery had hardly begun when that deadline had run." (Reply 5, [ECF No. 17](#).) This explanation also lacks merit. The Griffeths could have moved the Court to extend the Scheduling Order deadlines but chose not to do so. *See* [Fed. R. Civ. P. 16(b)(4)](#). The Griffeths' lack of explanation for this delay justifies denial of their Motion to Amend. *See [Minter](#)*, 451 F.3d at 1206.

### C. Undue Prejudice

The United States also argues that amendment at this stage of the proceedings would cause it undue prejudice. (Opp'n Mem. 7–8, [ECF No. 14](#).) Specifically, the United States argues the proposed amendment would require additional discovery and potentially require new experts. (*Id.* at 8.) The United States also notes that potential witnesses with information about the new claims the Griffeths seek to add "are no longer around or available, and may be difficult at best to now track down." (*Id.*)

Prejudice to the nonmoving party constitutes the most important factor in determining whether to grant leave to amend. *[Minter](#)*, 451 F.3d at 1207. "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Id.* at 1208 (citation omitted). Prejudice typically happens "when the

amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* Although the Griffeths' proposed amendments implicate the same accident as their original Complaint, as discussed above, the facts and investigations relevant to the original Complaint and proposed amendments differ significantly.

Reopening the discovery and expert reports deadlines would cure the United States' potential need for additional discovery and expert reports. But the Court has no means to remedy the resulting prejudice if the United States cannot locate witnesses it now deems necessary. Thus, although the Griffeths' unexplained delay alone warrants denial of their Motion to Amend, *see Minter*, 451 F.3d at 1205–06, undue prejudice also weighs in favor of denial of this Motion.

## RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge RECOMMENDS the District Judge DENY the Motion to Amend (ECF No. 10).

The Court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof. *Id.* Failure to object may constitute waiver of objections upon subsequent review.

DATED this 16th day of June, 2014.

BY THE COURT:

_____
EVELYN J. FURSE
United States Magistrate Judge