IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| LINDA GRIFFETH and DARIN GRIFFETH, Plaintiffs, vs. UNITED STATES OF AMERICA, Defendant. | ORDER AND MEMORANDUM DECISION Case No. 1:13-cv-00019-TC |

The United States filed a Motion in Limine to Exclude from Trial All Testimony Concerning a Pilot Vehicle Theory (Dkt. No. 27), and a Motion in Limine to Exclude from Trial All Testimony by Plaintiffs' Expert Witness Kaitlyn [sic] Phelps (Dkt. No. 40). On December 4, 2014, the court heard oral argument on both motions and testimony from Kaitlin Phelps to determine whether she qualifies as an expert under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Having considered the parties' arguments and the pertinent law, the court holds that (1) all evidence related to the pilot vehicle theory will be excluded at trial, and (2) Ms. Phelps is not qualified to testify as an expert witness. Accordingly, the court GRANTS the United States' motions.

**PROCEDURAL HISTORY**

On September 16, 2010, Linda Griffeth was driving a recreational motorcycle in Cache County, Utah when she collided with a "large rubber-tired loader vehicle, owned by the United States Forest Service and being driven by employee James Roberson." (Compl. ¶ 8, Dkt. No. 2.)

Ms. Griffeth was injured in the accident and filed an administrative claim with the Forest Service based on the following grounds: "The loader may not have been in working order, was traveling too fast for the conditions and the driver was not keeping a proper look out [sic] and failed to stop or make room in the roadway for the claimant's vehicle to pass." (Administrative Claim at 2, Dkt. No. 14-1.) On January 28, 2013, the Griffeths filed their complaint, alleging that Mr. Roberson negligently caused the accident "in that he was in the wrong lane, did not keep a proper lookout, did not have proper lighting on the vehicle, and failed to warn oncoming traffic of his location in the road despite being notified that traffic was coming." (Compl. ¶ 10.)

Approximately one year later, the Griffeths moved to amend the complaint to add twelve paragraphs that raised new theories that the United States acted negligently by "not providing a pilot vehicle or flag car ahead of the loader, failing to give adequate warning of the loader's movement, and not posting proper signage in the area of the loader's operation." (Proposed Am. Compl. ¶ 20, Dkt. No. 10.) The Griffeths provided Kaitlin Phelps' expert report on January 15, 2014 (Dkt. No. 12), and Dr. Scott Kimbrough's report on January 29, 2014 (Dkt. No. 15). Dr. Kimbrough's report explains his reconstruction of the accident and provides his conclusions about the accident, including his opinion that the United States should have used a pilot vehicle.

Magistrate Judge Evelyn Furse recommended that the court deny the Griffeths' motion to amend for three reasons: (1) the new negligence claims were jurisdictionally barred because they were not included in the Griffeths' administrative claim; (2) the Griffeths' motion was untimely; and (2) allowing the proposed amendments would unduly prejudice the United States. (Report and Recommendation at 1, Dkt. No. 22.) The court agreed and adopted Judge Furse's report and recommendation. (Dkt. No. 26.)

**ANALYSIS**

**I.     Pilot Vehicle Theory**

Under the Federal Rules of Evidence, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402.  Evidence is relevant if it supports a fact that "is of consequence in determining the action." Fed. R. Evid. 401(b). The United States maintains that "[t]he facts and arguments concerning the pilot vehicle theory are not of consequence to this action because the pilot vehicle theory was excluded by this Court's Order. Therefore, any such testimony is irrelevant to the case and should be excluded." (United States' Mot. in Limine to Exclude from Trial All Testimony Concerning a Pilot Vehicle Theory and Mem. in Supp. at 6, Dkt. No. 27.)  The court agrees.

Before filing suit under the Federal Tort Claims Act (FTCA), a plaintiff must comply with the FTCA's notice requirements, which "must be strictly construed" and "are jurisdictional and cannot be waived." Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 852 (10th Cir. 2005) (quotations omitted). The jurisdictional statute, 28 U.S.C. § 2675(a) dictates that claims presented to federal agencies must include "a written statement sufficiently describing the injury to enable the agency to begin its own investigation." Id. (quotations omitted). If a plaintiff fails to give adequate notice, the district court lacks jurisdiction to hear the claim.

To comply with § 2675(a), the administrative claim must "serve[] due notice that the agency should investigate the possibility of particular (potentially tortious) conduct." Id.  This requires "notice of the facts and circumstances underlying a claim rather than the exact grounds upon which plaintiff seeks to hold the government liable." Id. at 853.

In Trentadue, the government argued that the plaintiffs' administrative claim was insufficient to support an intentional infliction of emotional distress cause of action because the

claim "was based on a theory that prison officials had murdered Trentadue and did not discuss the specific grounds relied on by the district court." Id. at 852. The Tenth Circuit disagreed and found that the plaintiffs had given sufficient notice because "the plaintiffs' administrative claim specifically included a claim for intentional infliction of emotional distress and was based on the same underlying conduct that supported their amended complaint." Id. at 853.

By contrast, the court in Staggs v. United States ex rel. Department of Health and Human Services, 425 F.3d 881 (10th Cir. 2005), found the plaintiff's administrative claim inadequate to support a claim for lack of informed consent. The plaintiff in Staggs provided the agency with a detailed explanation of the grounds for her claim for medical malpractice. Id. at 883. Although the plaintiff argued that lack of informed consent should have been implied, the plaintiff never mentioned lack of informed consent in her administrative claim. Id. In addition, the court "deem[ed] it noteworthy that Staggs' complaint [was] silent regarding lack of informed consent." Id. at 885. Because lack of informed consent was omitted from the administrative claim and the complaint, the court concluded that the agency "could have reasonably concluded that a claim of lack of informed consent was not intended and that an investigation into lack of informed consent was unnecessary." Id.

Here, although the Griffeths were not required to spell out the exact grounds on which they would base their case, they were required to give "due notice that the agency should investigate the possibility of particular (potentially tortious) conduct." Trentadue, 397 F.3d at 852. As in Staggs, the Griffeths did not mention the failure to use a pilot vehicle in their administrative claim. And the Griffeths' complaint is silent regarding the pilot vehicle theory. All of the negligence alleged in the Griffeths' claim and complaint focuses on what the driver did or

did not do. There is nothing in the administrative claim that would give the agency notice of a pilot vehicle theory or the need to investigate the theory.

The court previously denied the Griffeths' motion to amend, primarily because the Griffeths did not include a pilot vehicle theory in their administrative claim.[1] After further consideration of the issues and applicable law, the court again concludes that the motion to amend was appropriately denied. The Griffeths may not avoid this ruling by attempting to introduce evidence of the pilot vehicle theory at trial. Such evidence is not relevant to the claims and theories alleged in the Griffeths' administrative claim and complaint, which relate solely to Mr. Roberson's operation of his vehicle. The Griffeths' witnesses, including Dr. Kimbrough, may testify to the extent their testimony relates to the negligence alleged in the complaint, but no witness may testify about the pilot vehicle theory.

## II. Kaitlin Phelps

The Griffeths seek to call Kaitlin Phelps as an expert in the area of motorcycle operation. The Griffeths plan to use Ms. Phelps' testimony to show that Ms. Griffeth was not negligent in the way she drove her motorcycle on the day of the accident. The United States contends that Ms. Phelps is not qualified to testify as an expert under Rule 702 of the Federal Rules of Evidence and that she has not given a sufficient explanation of how she reached her conclusions.

Although the standard under Rule 702 is "liberal . . . regarding expert qualifications," United States v. Gomez, 67 F.3d 1515, 1526 (10th Cir. 1995), "[t]he proponent of expert

---

[1] Although this order addresses the Griffeths' administrative claim, the motion to amend was also properly denied based on the untimeliness of the motion and the potential prejudice to the United States.

testimony bears the burden of showing that the testimony is admissible." Conroy v. Vilsack, 707 F.3d 1163, 1168 (10th Cir. 2013). To determine whether the proponent has met its burden, the court applies a two-part test.  First, the court decides whether the witness is "qualified by knowledge, skill, experience, training, or education to render an opinion." Id. (quotations omitted); Fed. R. Evid. 702. "Second, the court 'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" Conroy, 707 F.3d at 1168 (quoting United States v. Rodriguez-Felix, 450 F.3d 1117, 1122 (10th Cir. 2006)).

  To satisfy the first prong, the Griffeths assert that Ms. Phelps is qualified as an expert based on her experience with motorcycles. While a witness may qualify as an expert based solely on experience, Ms. Phelps' limited experience does not rise to the level that courts have found sufficient under Rule 702.  For example, in Werth v. Makita Elec. Works, Ltd., 950 F.2d 643 (10th Cir. 1991), the Tenth Circuit held that the plaintiffs' safety expert was qualified based on his experience, which included fifteen years as president of two safety consulting firms, five years experience as a safety director for General Motors, and seven years as a safety engineer for GMC and two insurance companies. Id. at 649 n.8.  The plaintiffs' second expert was also qualified because he had worked in the relevant industry for ten years before forming his own consulting firm. Id. at 652 n.10.

  But in Milne v. USA Cycling Inc., 575 F.3d 1120 (10th Cir. 2009), the court concluded that the plaintiff's expert was not qualified to testify about the proper procedures for mountain bike races. Although the expert had experience organizing road-bike races, he had minimal

experience with mountain bikes and had only participated in one or two mountain bike races. Id. at 1133-34.

Ms. Phelps' experience is similarly insufficient. Ms. Phelps explained in her report and again at the Daubert hearing that, although she has used ATVs throughout her life, she only began driving motorcycles when she married her husband about nine and half years ago. And in the last nine and a half years, Ms. Phelps' experience has been limited to driving motorcycles "as a family nearly every week when the weather allows," which Ms. Phelps explained was generally from late April to October. Ms. Phelps further stated that about 60-70% of this time is spent driving motorcycles and the remainder is spent driving ATVs. Significantly, Ms. Phelps admitted that she had never driven a motorcycle on the road where the accident took place until after she prepared her report. In addition, Ms. Phelps has no formal training and has not received endorsements or licenses for motorcycle operation. Ms. Phelps has never acted as an expert, consulted, or written on the subject. Unlike the experts in Werth, Ms. Phelps has minimal experience, limited to seasonal motorcycle riding with her family, in areas different than where the accident happened. The Griffeths have not demonstrated that Ms. Phelps has sufficient experience to qualify as an expert in this case.

Moreover, "a witness 'relying solely or primarily on experience' must 'explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" United States v. Fredette, 315 F.3d 1235, 1240 (10th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note). In Fredette, the court excluded an expert's testimony where he "never explained why his personal experience was a sufficient basis for his opinion." Id.

Here, Ms. Phelps does not disclose any methodology underlying her opinions. Ms. Phelps' report does not provide any explanation of how her experience allowed her to reach reliable conclusions about Ms. Griffeths' operation of the motorcycle on the particular day and on the specific road where the accident took place. And at the <u>Daubert</u> hearing, Ms. Phelps conceded that, with the information provided in her report, it would be impossible for someone else to determine how she formed her opinions. Under these circumstances, the court cannot find that Ms. Phelps' testimony "is the product of reliable principles and methods." Fed. R. Evid. 702(b). Because Ms. Phelps' testimony does not satisfy either prong of the Rule 702 standard, she cannot testify as an expert in this case.

## **ORDER**

For the foregoing reasons, the court GRANTS the United States' Motion in Limine to Exclude from Trial All Testimony Concerning a Pilot Vehicle Theory (Dkt. No. 27) and Motion in Limine to Exclude from Trial All Testimony by Plaintiffs' Expert Witness Kaitlyn [sic] Phelps (Dkt. No. 40). The Griffeths may not offer any testimony or other evidence related to the pilot vehicle theory. And Kaitlin Phelps may not testify as an expert.

SO ORDERED this 8th day of December, 2014.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge